Next case on the docket is Policemen's Benevolent Labor Committee v. Madison County, No. 5-24-1134. Now whenever you're ready, you may proceed. Please introduce yourself or for the record. Good morning. My name is Shane Doyles. With the Policemen's Benevolent Labor Committee. May it please the Court. I'm going to address the standard of review briefly in this case. I don't think there's any disagreement between the parties. Everybody agreed that it was de novo review. But with arbitration cases, it's de novo review. I don't know that the courts have articulated an additional standard there, but I would say de novo with a healthy dose of skepticism. The employer emphasizes that. The union concedes that. At bottom, technically, it's de novo review of the arbitration report. The basic core fact that led to the arbitration was that there was an accepted practice of employees at the Sheriff's Department in the Bargain Unit working holidays that fell on their normal work day. That's at the award at page 14 and 15. It's in the record at 223 to 224. Motivated by budget concerns during the pandemic, the employer changed that practice by announcing a new policy that was effective immediately. The employer did not propose to change how employees had worked holidays during ongoing contract negotiations. And instead, it just imposes change outside of the context of those contract negotiations. The union did not demand a bargain. The new policy. The point of the new directive from the employer was to reduce wages by reducing hours worked. So the question presented, the question for the arbitrator, from the union's point of view, was, was the employer statutorily obligated to bargain over the new directive? The answer is yes, if it included, if it was, let me back up, I missed one. Yes, if it involved a mandatory subject to bargaining, unless the union waived bargaining by words or deeds. The arbitrator found that the union waived bargaining by inaction, in other words, by its deeds. The award under review explains that the reason that no bargaining occurred was because the union failed to request it. The award under review does not state that the union waived bargaining in writing, and it would make no sense for the arbitrator to fault the union for not requesting bargaining, if he had concluded that before this situation ever arose, the union had already waived bargaining in writing. If that had occurred, it would have been futile or inconsequential for the union to demand bargaining. We asserted three bases for overturning the award. The first was that the arbitrator deliberately disregarded the law. The second is, we asserted the first and second together. The arbitrator nullified Article 27 in excess of his contractual authority, and that the award violates express dominant public policy under the Illinois Public Labor Relations Act. Now, with respect to the arbitrator deliberately disregarding the law, this is a difficult standard. I think the cases say it's a nearly impossible or almost nonexistent standard. However, before the arbitrator ruled, he received e-mails from both parties that provided him with an agreed statement of Illinois law. Additionally, the employer admitted he was fully informed about Illinois public sector bargaining law, including the concept of fait accompli. Moreover, the award at page 7 recites that the new policy was effective immediately. That's in the record at 216. So under the agreed statement of the law, the arbitrator was required to find that the employer was open to bargaining and did not present a union with the fait accompli. Those weren't the facts beforehand, so we didn't follow the law. That's what Count 1 asserts. Count 2, I think I'm misspeaking. I think I asserted Count 1 and Count 2 together, but the sort of alternative of Count 1 was that even if the court is not convinced that the arbitrator deliberately disregarded the law, he was still required to make sure the employer did not violate the law under Article 27 of the contract. So, because his decision was contrary to the Illinois Public Relations Act, it was in excess of his statutory authority, and the award should be overturned on that basis as well. And then finally, even if the court's not convinced that Article 27 applies in that fashion, the ruling is contrary to the Illinois Public Labor Relations Act, which, unless I'm mistaken, the employer has conceded is explicit and dominant in this case. The employer's brief appeared to concede that, and I don't recall any other expression of public policy that the employer offered that supposedly predominated over the Illinois Public Labor Relations Act. It is contrary to the Illinois Public Labor Relations Act that an employer can dictate changes to hours and wages, and this directive changed hours to reduce wages and it was not bargained. Section 4 of the Illinois Public Labor Relations Act, or unless faced, that is a violation of the law. The arbitrator's decision to deny bargaining under the circumstances was also contrary to that Illinois statute, which he could not ignore, overlook, or subtract from the contract without exceeding his authority. Because the arbitrator's decision effectively relieved the employer from complying with Illinois law, Illinois Public Labor Relations Act, it should not stand. There was no notice to the union, no prior notice to the union of this directive. The facts do not show that the employer was open to bargaining. This new directive was dictated and therefore presented to employers as this is how it is. In other words, it's fait accompli. There should be no legitimate dispute about that. The arbitrator's decision to blame the union for what the employer did is indefensible. It's contrary to the act and the cases under it. And we are respectfully asking the court to not enforce the award, which has the practical effect of vacating it. I believe you may proceed. Please identify yourself for the record. Thank you, Your Honor. May it please the court, my name is Corey Franklin, law firm Fort Harrison, LLC, and I have the great privilege and pleasure of representing County of Madison and its Sheriff, Jeff Conner. Your Honors, this is a very simple and straightforward case. The county exercised its clear and unequivocally bargained managerial rights under the terms of the Operative Collective Bargaining Agreement that it had with the Patrolman's Benevolent Labor Committee in directing its command staff to discontinue the practice of assigning non-essential officers to premium paid overtime on holidays. It had the clear and unequivocal right under the terms of the Collective Bargaining Agreement to do that, specifically in the Agreements Management Rights Clause, which is found in the appendix, page 27, which is Article I of the 2017 to 2020 Collective Bargaining Agreement. That provision states that the Sheriff retains the sole and exclusive right to manage the affairs of the Sheriff's Department, to direct its workforce, and as you go into Sub B, and assign employees to shifts and determine the amount of work needed. Nothing in this agreement shall be construed as delegating to others the authority conferred by law on the county, or in any way averting or reducing such authority. Moving forward into the Collective Bargaining Agreement, that appendix, page... Excuse me. 39, in hours of work, the contract states that this article shall not be construed as a guarantee of hours for work day, for work week, or for pay, period. The holidays section, found in Article 13 of the Operative Collective Bargaining Agreement, says that an employee who is required to work on a holiday is entitled to certain holiday pay premiums. What occurred in this case is that the Sheriff, or more specifically, his Chief Deputy acting in his direction, advised command staff officers that the county and the Sheriff's Department were going to exercise their clear and unequivocal rights under the terms of their agreement that they had bargained with Patrolman's Benevolent, and elect not to assign non-essential personnel on those holidays. The union objected because that provided an opportunity for some officers, under prior practice, to enhance their income, earning that premium pay. But at its core, this is simply a contractual interpretation venture. And to prevail on their appeal, the union has to demonstrate that the arbitrator's award didn't draw a sentence from the terms and conditions set forth in the Operative Collective Bargaining Agreement. It unequivocally did. Arbitrator Bailey, who is a member of the National Academy of Arbitrators and one of the more preeminent arbitrators we have going in the little niche world of labor law that we work in, did yeoman's work going through the party's arguments, which were adduced over the course of about a half a day hearing. And he found, not surprisingly, that the relevant terms of the Collective Bargaining Agreement supported the employer's position that it had the rights under the contract that it bargained with the Patrolman's Benevolent Labor Committee to act precisely as it did. Which he cites in his award, page 13 through 15, I believe? Yes, Your Honor. I mean, makes very specific findings and rulings. Yes, Your Honor. And in that regard, I don't think it is possible to find that this award does not draw its essence from the arbitrator's interpretation of the relevant provisions of the Collective Bargaining Agreement. So where does the union focus its time? The union focuses its time on stating that either the arbitrator exceeded his authority under Article 27, which compels compliance with Illinois law, or that he violated public policy. In either respect, that dog simply doesn't hunt. Let me say why. First, as a practical matter, while my opposing counsel references Section 4 of the Public Sector Labor Law, it does so in a fashion that ignores the fact that these issues have already been bargained. This is not a circumstance where the county was coming up with an entirely new proposal to address wages, hours, terms, and conditions of employment. Indeed, these rights that Arbitrator Bailey interpreted in the course of his award were rights that had long ago been bargained and granted to the city. To compel the city to bargain with the union every time it took an action a different action under the course and scope of its authorized rights under the Collective Bargaining Agreement would defy the point of having a bargaining agreement. You're just bargaining all the time anyway. So as a function of compliance with the Labor Relations Act, that's a moot point. Those issues were addressed to the extent that there was any bargaining obligation after the county decided to alter its practice of how it was applying the terms of the Collective Bargaining Agreement within the scope of its sole and exclusive discretion under Article I. At best, at very best, and to be clear, I don't concede that there was an obligation in this regard, but at best that obligation would be to bargain with the union over the impact of that decision, and that is incumbent upon the union to request some measure of bargaining. Now, at that point in time, I will represent to the Court that I was in the process of negotiating a Collective Bargaining Agreement with Patrolman's Benevolent, and not at one point in time did the issue come up in bargaining. It wasn't separately raised with the Chief Deputy or the Sheriff's Department, and it wasn't raised in subsequent negotiations. Did it always reflect the building record? Yes, Your Honor. And it was actually addressed by the arbitrator in his award as well. So as a function of exceeding his authority under the Act, again, that dog doesn't hunt. As a function of public policy, likewise, that's a disingenuous argument. The county went to great lengths to bargain the contractual rights that it had, which are enumerated throughout the multiple pages of the Collective Bargaining Agreement. If it didn't have the right to act within the scope of those rights, then the purpose of collective bargaining is null. So the notion that we have an obligation to continually rebargain our obligations under the terms of that contract simply doesn't make sense. As it relates to the union's first argument, they have to show that the arbitrator deliberately disregarded the law. Both in the underlying summary judgment hearing and the briefing in this case, much pay is made of the fact that arbitrator Bailey was on notice of the law. Absolutely. Everybody understood the law. The fact is they disagreed with the manner in which he applied that law, but that doesn't mean that he purposefully threw the law out the window and said something akin to, I don't care what the state of Illinois says about this, I'm not going to fine for the union. That is the type of egregious rejection of law that is necessary to overturn an arbitrator's award and what everybody agrees is a very narrow standard in a case like this. With respect to the second argument, again, there is no question that he had the authority under the terms of the collective bargaining agreement to interpret its terms, interpret bargaining history relevant to its terms, and to make an award that assessed the party's rights and responsibilities under the terms of that agreement, which is precisely what he did. To say that he ignored or somehow detracted from the terms of the agreement because he applied both extant arbitral authority, Illinois law in the terms of the contract in a fashion that the union disagreed with, would undermine the purpose of labor arbitration to provide a final unbinding ruling if simply disagreement with the outcome of the application of law to facts were to justify a vacatur. Finally, with respect to public policy, again, this is an incredibly narrow exception requiring a clear showing that the award violates an explicit public policy. Just the mere vague reference to the notion of good faith bargaining doesn't get you there. There was good faith bargaining. How do I know there's good faith bargaining? Because I've got a collective bargaining agreement in the record from 2017 to 2020 that's about 50 pages long, and we've had them before and had them after. That's demonstrative of good faith bargaining. And it would be disingenuous to say that when the parties agree to terms of a collective bargaining agreement that they would be denied the opportunity to take advantage of the rights and responsibilities that they have under those agreements. As it relates to the actual exercise of rights, I think the contract, as Arbitrator Bailey found, is pretty clear and unambiguous on the relevant language. Chief Deputy, now Sheriff Conner, had only an obligation to pay premium pay for hours that were required for individuals to work on a holiday. And it is not to say that the Madison County Sheriff's Department no longer works on holidays. That would be a misnomer. They do. It's just that there are certain nonessential personnel who aren't working on holidays, whether that may be courthouse deputies who are not necessary for the operation of the sheriff's function on a designated holiday when the court is not in session, process servers and the like. The idea of having those holidays is to provide holidays for deputies to spend time with their families, and that's the goal. The goal is not to find as many ways as possible to provide premium pay opportunities for those who desire it. And given the financial exigence that the county and the sheriff identified in 2020, it was deemed that this was the best path to follow. In the absence of any prohibitive contractual language that would limit that exercise of managerial discretion, consistent with what Arbitrator Bailey found, we submit that that exercise was valid in accordance with the terms of the collective bargaining agreement, in accordance with extant arbitral precedent, and most importantly, consistent with the expectations of the State of Illinois under the Illinois Public Sector Labor Law. I see I have more time, but I will allow the county to rest on the brief unless you have any questions. No questions. Thank you, Your Honor. Thank you. Counsel for the county has just provided you with the written waiver argument. That is false. That rewrites the arbitration report. That is not what the arbitrator found. Again, a written waiver would mean that requesting bargaining under the circumstances would have been futile. It would have been inconsequential. It would have been of no effect. The union waived this long ago in the contract. That is not what the arbitrator found in the specific fourth finding on page 15. What makes this case different is Article 27 of the contract, which incorporates state law. Granted, 100 percent. Article 27 didn't exist. Everything that counsel just told you should prevail. But Article 27 is there, and it can't be ignored. The arbitrator couldn't ignore it. The arbitrator said in response to the union's statutory claim, the arbitrator said that the union was required to demand bargaining, and it did not do so. Therefore, its statutory claim fails. That is false. That is 100 percent not the law. The arbitrator had to find that the employer was, first of all, gave notice to a union official with authority to act, that the employer was open to bargaining, and that it did not dictate the changes, but instead it did not present them to the union as a fait accompli. It made none of those findings. The record shows that the employer was not open to bargaining. It did not give the union notice. It did not give the union official with authority to act notice. And unless the English language has changed, it presented the union as a fait accompli. For all of those reasons, the award is contrary to the Illinois Public Labor Relations Act. There still has not been any presentation of any supposed other predominant, explicit public policy that trumps the Illinois Public Labor Relations Act in this case. And the arbitrator exceeded his authority because that is exactly what he did. He knew what the law was. He knew it required the employer. He didn't like it, so he didn't apply it. And that's why the union lost. And that's why this case should be taken. No questions. All right, thank you, counsel. Thank you. We will take this matter under advisement and issue a ruling in due course. Thank you.